# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Darion A. HAMILTON, Senior Airman
United States Air Force, Appellant

### No. 18-0135
Crim. App. No. 39085

Argued October 23, 2018—Decided February 28, 2019

Military Judge: James R. Dorman

For Appellant: *Major Todd M. Swensen* (argued); *Captain Mark J. Schwartz.*

For Appellee: *Captain Michael T. Bunnell* (argued); *Colonel Julie L. Pitvorec, Lieutenant Colonel Joseph Kubler,* and *Mary Ellen Page,* Esq. (on brief).

Judge RYAN delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges OHLSON, SPARKS, and MAGGS, joined.

————————

Judge RYAN delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted Appellant, according to his pleas, of one specification of wrongfully possessing child pornography and one specification of wrongfully distributing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012). He was sentenced to confinement for two years, reduction to E-1, forfeiture of all pay and allowances, and a bad-conduct discharge. The United States Air Force Court of Criminal Appeals (AFCCA) affirmed the findings and the sentence as approved by the convening authority. *United States v. Hamilton*, 77 M.J. 579 (A. F. Ct. Crim. App. 2017) (en banc).[1]

---

[1] We granted Appellant's petition to review the following issues:

This Court's decision in *United States v. Barker*, 77 M.J. 377 (C.A.A.F. 2018), controls resolution of the dispositive issue in this case. Unsworn victim impact statements as defined by Rule for Courts-Martial (R.C.M.) 1001A (2016)[2] are not government exhibits and, in order to be presented at sentencing, they must comply with the dictates of the rule. Under R.C.M. 1001A (2016), a victim exercises the right to be reasonably heard by either offering an unsworn victim impact statement in person, or through a designated advocate as R.C.M. 1001A (2016) requires. *Barker*, 77 M.J. at 383. In this case, the military judge admitted victim impact statements offered as government exhibits and authenticated by members of law enforcement absent any indication either that the victims intended their statements to be used in this particular prosecution or that a "designee" was appropriate under the rule. This was an abuse of discretion.

While a closer question, we nonetheless affirm the decision of the AFCCA because the error did not have a substantial impact on the adjudged sentence. Article 59, UCMJ, 10 U.S.C. § 859.

## I. **Fact and Procedural History**

Appellant was convicted of possession and distribution of child pornography. During the sentencing phase of the court-martial, the Government sought to introduce unsworn victim impact statements from three persons identified only as B, B's mother, and J, as well as a video of a speech given by B at a 2015 Crimes Against Children Conference. Three of the images on Appellant's hard drive were part of the "Blue Pillow" series, a collection of child pornographic images that depicted B. In order to offer the statements from B and her mother, the Government called Detective Kevin

---

I. Are victim impact statements admitted pursuant to R.C.M. 1001A evidence subject to the Military Rules of Evidence?

II. Whether the military judge erred in admitting Prosecution Exhibits 4, 5, and 6.

[2] We note that in the 2019 edition of the *Manual for Courts-Martial*, R.C.M. 1001A has been incorporated into R.C.M. 1001 as R.C.M. 1001(c) (with subsection header "Crime victim's right to be reasonably heard").

Papineau from the Elk Grove Police Department. Detective Papineau was involved in the original 2009 investigation involving the sexual assault of B. Detective Papineau testified that he spoke with B several times a year and was "familiar with her desires regarding sentencing cases involving the Blue Pillow series." He also testified that she requested that unsworn victim impact statements written by B and her mother, as well as the video of her speech, be submitted in all trials involving her image. There was no indication that B or her mother were aware of Appellant's trial or that Detective Papineau was or could qualify as a "victim's designee" under R.C.M. 1001A(e) (2016), given that B was over the age of 18.[3]

J, who created the other victim impact statement, was depicted in the "Marineland" series, another named collection of child pornographic images. An image of J from the "Marineland" series was part of the basis for the charged offenses. J did not appear at trial. Instead, the Government offered an affidavit from Detective Deborah Behymer of the Okanogan Sheriff's Office with an accompanying unsworn victim impact statement from J. The affidavit averred that Detective Behymer investigated the original case involving the primary defendant responsible for the "Marineland" series. As part of that investigation, the affidavit states that Detective Behymer was acquainted with J, that she was familiar with J's victim impact statement, and that J requested, well prior to the instant case, that the statement be presented at sentencing in cases involving her image. There was no indication that J was aware that her statement was being offered at Appellant's trial or that Detective Behymer either was or could qualify as a "victim's designee," R.C.M. 1001A(e) (2016), given that no evidence was provided that J was under the age of eighteen or could otherwise be represented by a designee under R.C.M. 1001A(e) (2016).

When the Government introduced the victim impact statements from B, her mother, and J, defense counsel

---

[3] R.C.M. 1001A(e) (2016) permits a "victim's designee appointed under R.C.M. 801(a)(6)" to make an unsworn statement on the victim's behalf if the victim is "under 18 years of age, incompetent, incapacitated, or deceased."

objected, arguing that they were not proper evidence of victim impact because they were prepared before Appellant committed his offenses and, therefore, not directly related to or resulting from Appellant's offenses. Defense counsel also argued that B's recorded video was not evidence of victim impact at all, because it merely praised the efforts of law enforcement. The Government argued in response that the statements and video were proper evidence of victim impact under R.C.M. 1001(b)(4) (2016), and, alternatively, that R.C.M. 1001A (2016) afforded the prosecution the opportunity to provide victim impact statements in this manner.

While the military judge permitted the victim impact statements to be presented, his rulings do not clearly indicate whether the statements were admitted as aggravation evidence under R.C.M. 1001(b)(4) (2016), as victim impact statements under R.C.M. 1001A (2016), or both. The discussion surrounding defense counsel's objections to the victim impact statements and the Government's arguments in support of the statements' admissibility were less than exact, as they appear to be based at times on R.C.M. 1001(b)(4) (2016), and at other times on R.C.M. 1001A (2016).

Regardless, it is clear that: (1) B, B's mother, and J did not appear at sentencing; (2) the individuals that offered the statements and video either at trial or through affidavit were neither the "victim's counsel," R.C.M. 1001A(e)(2) (2016), nor a "victim's designee," R.C.M. 1001A(e) (2016); and (3) the statements and video were marked and admitted as Government exhibits. Further, the rules of evidence had not yet been relaxed when the statements were admitted. *See* R.C.M. 1001(c)(3) (2016).

The military judge nevertheless ruled that the victim impact statements were admissible, reasoning that "courts have recognized that . . . the victims of child pornography are considered, for the sake of the law, as direct victims of the subsequent viewing of [their images] by other individuals." He further determined that he would give the statements the "due weight" that he believed they deserved under the law.

The Government referenced the content of the victim impact statements during its closing argument at sentencing, asserting that "this is not a victimless crime. You will watch the video of [B], you will read her statement, you will read [J's] statement." The Government also quoted from J's victim impact statement and highlighted the ongoing trauma and revictimization that J suffers "[e]very time someone else sees [the] pictures or videos" depicting her image. The Government maintained that "[a]ll of these kids in the photos and videos [were] sexually exploited by the people they trusted," and that "all of those things were done so that the accused and people like [Appellant] could watch and enjoy their suffering and their pain." Finally, the Government closed by asking, "[w]as there mercy for [B] when she was sexually exploited? Was there mercy for [J] or any of the over 100 children raped and sexually abused? There was no mercy for them. So, it is unclear why the accused deserves mercy when none was given to them."

On appeal, the AFCCA concluded that the distribution and viewing of child pornography is a continuing crime, and that B, her mother, and J were victims of Appellant's criminal conduct. *United States v. Hamilton*, 77 M.J. 579, 584–85 (A.F. Ct. Crim. App. 2017). It then emphasized the difference between government evidence in aggravation offered under R.C.M. 1001(b)(4) (2016) and unsworn victim impact statements offered at sentencing under R.C.M. 1001A. (2016). *Hamilton*, 77 M.J. at 585. Despite the fact that the statements were clearly offered by the Government and marked as Government exhibits, the AFCCA nonetheless concluded that the military judge must have admitted the statements pursuant to R.C.M. 1001A (2016), since the unsworn statements were otherwise inadmissible. *Hamilton*, 77 M.J. at 586. Determining that the unsworn victim impact statements were admissible, the AFCCA held that such statements are not evidence,[4] and that the military judge did not abuse his discretion in admitting them. *Id.* 585–86.

---

[4] While not specifically raised at trial, Appellant argued before the lower court that even if the victim impact statements were admitted under R.C.M. 1001A they should have been excluded under Military Rule of Evidence (M.R.E.) 403. However, in finding that victim impact statements offered under R.C.M. 1001A were

## II. Discussion

Article 6b, UCMJ, 10 U.S.C. § 806b provides victims of UCMJ offenses the "right to be reasonably heard" at a sentencing hearing related to the crime in which they were the victim. Article 6b(a)(4)(B), UCMJ. Giving this statute effect, the President promulgated R.C.M. 1001A (2016). This rule "facilitates the statutory right to 'be reasonably heard,'" *Barker*, 77 M.J. at 378, and permits a victim to make an unsworn statement in non-capital cases. R.C.M. 1001A(b)(4)(B). A victim making an unsworn statement may not be cross-examined on the statement, but the defense is permitted to "rebut any statement of facts therein." R.C.M. 1001A(e) (2016). In *Barker*, this Court held, consistent with the structure and language of Article 6b, UCMJ, and R.C.M. 1001A (2016), that the right to be reasonably heard requires that the victims be contacted, given the choice to participate in a particular case, and, if they choose to make a statement, offer the statement themselves, through counsel, or through a "victim's designee" where appropriate. R.C.M. 1001A(d)–(e) (2016); *Barker*, 77 M.J. at 382–83.

The Government attempts to distinguish *Barker* from the present case, arguing that unsworn victim impact statements in that case were not offered at sentencing in conjunction with accompanying affidavits or testimony to establish the provenance of such statements, as was the case here. Specifically, the Government contends that Detective Behymer's affidavit related to J's victim impact statement and Detective Papineau's testimony regarding B and B's mother's statements, enabled the military judge to ascertain that J, B, and B's mother intended their statements to be used in Appellant's trial in particular. We disagree. First, law enforcement officers are not victim's counsel, and no showing was made that they either were appointed or could be appointed as a victim's designee for these victims. *See supra* at 4–5. Second, and relatedly, while the AFCCA correctly distinguished evidence offered by the Government under

---

not evidence, the AFCCA also concluded that the M.R.E. 403 balancing test was inapplicable in assessing the "reasonable constraints that may be placed upon such statements." *Hamilton*, 77 M.J. at 585–86.

R.C.M. 1001(b)(4) (2016) from victim impact statements offered under R.C.M. 1001A (2016), those distinctions were not respected in this case.

**A.**

This Court reviews "a military judge's decision to admit evidence for an abuse of discretion."[5] *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002) (citation omitted). "A military judge abuses his discretion when he admits evidence based on an erroneous view of the law." *Barker*, 77 M.J. at 383 (citing *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013)). Even if the language of R.C.M. 1001A (2016) and R.C.M. 1001(b)(4) (2016) were not perfectly clear, these facts are controlled by the recent decision in *Barker*, as this case is on direct appeal. Because the military judge erred in permitting the introduction of victim impact statements that did not comply with either R.C.M. 1001(b)(4) (2016) or R.C.M. 1001A (2016), he abused his discretion.

There is no dispute that B, her mother, and J were victims for purposes of R.C.M. 1001 (2016) and R.C.M. 1001A (2016). *See Paroline v. United States*, 572 U.S. 434, 457 (2014) ("The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy."). The victim impact statements from B and J discuss the abuse both suffered at the hands of their fathers[6] as well as the long-term harm they suffer from the continuing recirculation of their images. B's mother's statement describes the

---

[5] On appeal, Appellant's argument that the victim impact statements fail to comply with the procedural requirements of R.C.M. 1001A (2016) is far clearer than the basis for his objections at trial. Of course, even if we reviewed that argument under the more stringent plain error test, as we do for arguments raised for the first time on appeal, *see United States v. Sweeney*, 70 M.J. 296, 303–05 (C.A.A.F. 2011); *cf. United States v. Escalante-Reyes*, 689 F.3d 415, 422 (5th Cir. 2012), Appellant cannot prevail because there is no prejudice. *See* Article 59, UCMJ; *infra* pp. 12–14.

[6] We caution military judges, particularly where victim impact statements are offered to a panel of members, to be mindful of information that is not attributable to the offenses for which an accused is being sentenced.

acts committed by B's father[7] and the resulting financial and psychological hardships suffered by the family. In B's recorded speech, she recounted the impact of the investigation and trial of her father and lauded law enforcement efforts to combat crimes against children.[8]

It is not entirely clear whether the military judge believed that the victim impact statements and video were admissible under R.C.M. 1001(b)(4) (2016) (government evidence in aggravation) or as unsworn statements under R.C.M. 1001A(e) (2016) (victim's right to be reasonably heard). In either event, he abused his discretion. As R.C.M. 1001(a)(1)(A) (2016) and 1001A (2016) make clear, these categories are distinct.

Assuming R.C.M. 1001(b) (2016) provided the basis for the military judge's admission of the exhibits as prosecution exhibits (which is how they were offered and marked), *see United States v. Machen*, No. ACM 39295, 2018 CCA LEXIS 419 at *10, 2018 WL 4440395, *4 (A. F. Ct. Crim. App. Aug. 29, 2018) (unpublished) ("[M]arking the victim impact statements as prosecution exhibits accurately captured how they were admitted as these exhibits were offered by the Prosecution during *its* sentencing case."), they do not comply with the Military Rules of Evidence and should have been excluded. *See United States v. Saferite*, 59 M.J. 270, 273 (C.A.A.F. 2004) (acknowledging that the Military Rules of Evidence apply at sentencing). All three exhibits constituted out of court statements offered for their truth and were inadmissible hearsay. *See* M.R.E. 801(c). Moreover, witnesses are required to swear an oath or affirmation before testifying. M.R.E. 603. Testimony that the statements were prepared by B, B's mother, and J, cures none of these problems. *See Cornelius v. Hondo*, 843 F. Supp. 1243, 1247 (N.D. Ill. 1994) ("[A]uthentication or identification of a writing or speaker does not resolve any existing hearsay problems." (citing Fed. R. Evid. 901(b) advisory committee's note));

---

[7] *See supra* note 6.

[8] *See supra* note 6; *Hamilton*, 77 M.J. at 590–91 (Huygen, J., concurring in the result in part and dissenting in part) (noting that the videotaped statement did not contain "victim impact" as defined by R.C.M. 1001A(b)(2) (2016)).

*United States v. Dababneh*, 28 M.J. 929, 934 (N-M. Ct. Crim. App. 1989) ("After establishing by a preponderance of the evidence that the document is what it purports to be, the proponent of the document must then establish that it is not hearsay, [M.R.E.] 801, or that it falls within an exception to the rule against hearsay, [M.R.E.] 803 and 804."). These statements, absent a stipulation by the defense as part of a pretrial agreement or otherwise, were not admissible as government evidence in aggravation. *See United States v. Clark*, 53 M.J. 280, 281–82 (C.A.A.F. 2000) ("Evidence that otherwise would be inadmissible under the Military Rules of Evidence may sometimes be admitted at trial through a stipulation, if the parties expressly agree, if there is no overreaching on the part of the Government in obtaining the agreement, and if the military judge finds no reason to reject the stipulation in the interest of justice." (internal quotation marks omitted)).

Nor were they admissible as victim impact statements under R.C.M. 1001A (2016). The genesis and analysis of R.C.M. 1001A is detailed at length in *Barker*, 77 M.J. at 382–84, and we raise only the most salient points that require reemphasis. Importantly, "the rights vindicated by R.C.M. 1001A (2016) are personal to the victim in each individual case. Therefore, the introduction of statements under this rule is prohibited without, at a minimum, either the presence or request of the victim, R.C.M. 1001A(a), the special victim's counsel or the victim's representative, R.C.M. 1001A(d)–(e)." *Barker,* 77 M.J. at 382. And:

> All of the procedures in R.C.M. 1001A contemplate the actual participation of the victim, and the statement being offered by the victim or through her counsel. Moreover, they assume the victim chooses to offer the statement for a particular accused, as they permit only the admission of information on victim impact "directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2).

*Id.* at 383.

Here, as in *Barker*, the military judge misunderstood what R.C.M. 1001A (2016) requires. It is indisputable that R.C.M. 1001A (2016) reflects the emphasis on a victim's

right to be reasonably heard regarding the "impact . . . directly relating to or arising from the offense of which the accused has been found guilty." This requires, pursuant to "Article 6b, UCMJ, that victims be contacted and have the choice to participate and be consulted in cases where they are victims." *See Barker*, 77 M.J. at 383 (citing Article 6b(a)(2)–(5), UCMJ). While detectives in this case represented to the military judge that B and J generally requested that their statements be submitted in cases involving their images, such all-encompassing requests do not satisfy the procedures outlined in Article 6b, UCMJ, or R.C.M. 1001A (2016). Both enactments envision actual victim participation in the proceedings and assume that a victim offers an impact statement for a particular accused at a specific court-martial. *Barker*, 77 M.J. at 383. For that reason, admission of information on victim impact must "directly relat[e] to or aris[e] from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2) (2016).

R.C.M. 1001A(e) (2016) further provides victims the right to make an unsworn statement, and not to be cross-examined. However, R.C.M. 1001A(e) (2016) does not encompass an unsworn statement from an unidentified victim who is unaware of the case at hand. Such statements are virtually irrebuttable and inconsistent with R.C.M. 1001A(e)'s mandate that the defense may "rebut any statements of fact" contained in unsworn statements. *Barker*, 77 M.J. at 382.

Furthermore, the right to be reasonably heard provided by R.C.M. 1001A (2016) belongs to the victim, not to the trial counsel. *See* R.C.M. 1001A(a) (2016) ("A *crime victim* of an offense of which the accused has been found guilty has the right to be reasonably heard at a sentencing hearing relating to that offense." (emphasis added)). This is not a mechanism whereby the government may slip in evidence in aggravation that that would otherwise be prohibited by the Military Rules of Evidence, or information that does not relate to the impact from the offense of which the accused is convicted. *See* R.C.M. 1001(b)(4) (2016). Here, as in *Barker* and *Machen*, "trial counsel appropriated the victims' rights under R.C.M. 1001A in order to admit *the Government's evidence* in aggravation." *Machen*, 2018 CCA LEXIS 419, at

*10, 2018 WL 4440395 at *4 (emphasis in original). The victim impact statements in this case do not comply with the requirements of R.C.M. 1001A (2016), and, thus, were improperly admitted.

**B.**

This does not answer the altogether different question whether such R.C.M. 1001A (2016) statements are otherwise subject to the Military Rules of Evidence. Interpreting the interplay between unsworn victim impact statements under R.C.M. 1001A (2016) and the Military Rules of Evidence is a question of law and reviewed de novo. *United States v. Leahr*, 73 M.J. 364, 369 (C.A.A.F. 2014) (citation omitted).

Although this Court previously determined that "the Military Rules of Evidence are applicable to sentencing . . . thus providing procedural safeguards to ensure the reliability of evidence admitted during sentencing," *Saferite*, 59 M.J. at 273 (citations omitted), unsworn victim impact statements are uniquely situated in the substrate of the sentencing process. The plain language of R.C.M. 1001A (2016) clearly contemplates that at least some of the Military Rules of Evidence are inapplicable to victim impact statements. Unlike, for instance, the testimony of an expert witness at sentencing—which must be sworn, M.R.E. 603, and subject to cross-examination, M.R.E. 614(a)—an unsworn victim's statement is just that, unsworn, and R.C.M. 1001A(e) (2016) provides that the victim cannot be cross-examined.

But given that the victim impact evidence as offered was wholly inadmissible in this case, resolution of the question whether such statements are otherwise subject to the Military Rules of Evidence or not is rendered moot. In *Barker*, we noted that: "Since determination of that issue is not necessary to resolution of this case, we will decide it in *United States v. Hamilton*, 18-0135/AF, where the issue can be briefed."

While the issue has been briefed, it is similarly unnecessary to the resolution of this case, and to decide it would constitute an advisory opinion. *See United States v. Chisholm*, 59 M.J. 151, 152 (C.A.A.F. 2003) (reaffirming that this Court "generally adhere[s] to the prohibition on advisory opinions as a prudential matter"). Additionally, in those

11

cases where a military judge complies with the detailed pa-
rameters set forth in R.C.M. 1001A (2016) and exercises
sound discretion in determining whether the "right to be
reasonably heard" is exceeded, resolution of this issue is un-
likely to be dispositive.[9]

## C.

Although the military judge abused his discretion, we
conclude that there was no prejudice to the substantial
rights of the accused. Article 59(a), UCMJ. If an error occurs
in the admission of evidence at sentencing, the test for prej-
udice "is whether the error substantially influenced the ad-
judged sentence."[10] *United States v. Sanders*, 67 M.J. 344,
346 (C.A.A.F. 2009) (citation omitted). When determining
whether an error substantially influenced a sentence, this
Court considers the following four factors: "(1) the strength
of the Government's case; (2) the strength of the defense
case; (3) the materiality of the evidence in question; and (4)
the quality of the evidence in question." *United States v.
Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017) (citation omitted).

Here, the case presented by the Government at sentenc-
ing was strong. During the providence inquiry, Appellant
admitted that he knowingly and wrongfully possessed and
distributed the visual depictions of minors engaging in sex-
ually explicit conduct. Attached to the stipulation of fact
were more than one hundred files located on Appellant's
computer that contained pornographic images and videos of
children between the ages of two and fourteen, at least fifty
of which contained known child victims as identified by law
enforcement from past criminal investigations. Appellant
stipulated that these images and videos contained child por-

---

[9] Of course, to the extent that provisions of the Military Rules
of Evidence contradict the crime victim's right to be "reasonably
heard" under R.C.M. 1001A (2016), see, e.g., M.R.E. 603, the clear
intent of Congress and the President dictate that the latter con-
trols. See Article 6b, UCMJ.

[10] Because Appellant only challenges the admission of Prose-
cution Exhibits 4, 5, and 6 as improper under R.C.M. 1001 (2016)
and R.C.M. 1001A (2016), and does not assert constitutional error,
we assess prejudice under Article 59, UCMJ. *United States v. Di-
az*, 69 M.J. 127, 137 (C.A.A.F. 2010).

nography including depictions of adults having oral, anal, and vaginal intercourse with minor children and the lascivious exhibition of the genitals or pubic area of minors. In contrast, Appellant's sentencing case, which consisted of three character letters, a newspaper article that described a tragic car accident that Appellant endured, Appellant's own unsworn statement, and a description of the awards he received in the military, was relatively weak.

Additionally, while the content of the victim impact statements was material for sentencing purposes, it lacked the quality necessary to affect Appellant's sentence in this case. First, and quite importantly, this was a military judge alone trial and the military judge is presumed to know what portions of argument are impermissible, absent clear evidence to the contrary. *See United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) (citation omitted). The Government's use of the inadmissible victim impact statements themselves during argument was impermissible. Appellant was not convicted of child sexual abuse, and it was improper argument to detail the victims' sexual abuse and attribute the pain and suffering from the abuse to him. *See United States v. Clifton*, 15 M.J. 26, 28 (C.M.A. 1983) (finding trial counsel's argument improperly drew a connection between the accused's actions and unrelated offenses in order to inflame the passions and prejudices of the panel members). However, while the military judge erroneously allowed the Government to introduce the victim impact statements, he specifically reiterated that he would give them only the "weight [they] deserve." Despite the Government's improper references to the victim impact statements during argument, we see no indication that the military judge gave significant weight to the impermissible aspects of the statements.

Second, irrespective of whether the statements were admitted, the Government's argument related to revictimization through the continued circulation of pornographic images was permissible, as it is settled law that Appellant's conduct sustained and aggravated the victimization of B, her mother, and J. *See Paroline*, 572 U.S. at 457; *Barker*, 77 M.J. at 381. As in *Barker*, "many of the themes and harms contained in the improperly admitted [exhibits] are

well known to the law, and thus are presumed to have been known by the military judge." *Barker,* 77 M.J. at 384. This aspect of the Government's use of the victim impact statements was cumulative to permissible arguments related to the nature of Appellant's offense.

Finally, while Appellant faced a maximum of thirty years of confinement, he agreed to a confinement cap of five years and he was sentenced to just two years. *See Barker*, 77 M.J. at 384. Accordingly, we are satisfied that the errant admission of prosecution exhibits 4, 5, and 6 did not have a substantial impact on the adjudged sentence.

### III. Decision

The judgment of the United States Air Force Court of Criminal Appeals is affirmed.